## MERVIN & GOLDSMITH *vs.* KUMBEL.

In an action of debt on a judgment obtained against two *joint debtors*, but in which only one of them was served with process, the plaintiff, to support his action on the judgment against the debtor not served with process in the first suit, is *bound to show his liability by evidence other than the judgment*, under the plea of *nul tiel record* interposed by the defendant.

A plea by such defendant that he had not been served with process in the suit in which the judgment was recovered, that he had not notice of the suit, nor appeared therein, is not a proper plea.

After a judgment like that sued upon in this case is entered, the plaintiff is not at liberty to recur to the original cause of action.

How far full faith and credit must be given in the courts of one state, to the records and judicial proceedings of another, considered and commented upon.*

ERROR from the New-York common pleas. *Kumbel* sued *Mervin & Goldsmith*, and declared in the usual form in debt, on judgment, for $686,78,
recovered by him against the defendants in the New-York com-
[ *294 ] mon pleas in December, *1830, in an action of assumpsit. The
defendant *Mervin* pleaded : 1. *Nul tiel record ;* and 2. That at the time of the commencement of the suit in which the judgment was recovered, and that at the time the judgment was rendered, and during all the intermediate time, he was not a citizen, or inhabitant, or resident, of the state of New-York, nor amenable to its laws, nor within the jurisdiction of the courts thereof, and that the original process in the suit in which the judgment was recovered was never served on him, nor did he have any notice of, nor appear in the suit. *Replication*, that the suit in which the judgment was recovered, was commenced by the service on *Goldsmith* of a *capias ad respondendum,* issued against both of the defendants. Verification. *Demurrer* to this replication, and joinder in demurrer. The court below rendered judgment for the plaintiff on the demurrer. Goldsmith made default.

On the trial of the issue upon *nul tiel record,* the plaintiff offered in evidence the judgment record, in which it was stated, in the usual form, that

---

* Judge BRONSON concurs with his brethren in holding that the plaintiff was bound to establish the liability of the defendant by evidence other than the judgment entered against him in an action in which he was not served with process ; but differs from them as to the effect of the judgment. He holds that such judgment, in an action upon it against a defendant not served with process, proves nothing against such defendant ; that not only his *liability,* but the *extent of such liability,* must be established by evidence other than the judgment ; the only effect of the judgment being to subject the partnership property of the defendants to execution, and to *limit* the plaintiff's claim to the amount specified in it, so that there cannot be a recovery for a *greater sum* in the second, than in the first suit. Consequently he holds that the judgment not being even *prima facie* evidence of liability, *an action of debt* will not lie upon it ; and further, that if the p aintiff wishes to reach beyond the partnership property, he may bring his suit on the *original cause of action* against the defendant not served with process. On the contrary, Judge COWEN holds that the *action of debt* lies, and that the original cause of action is *merged* in the judgment. The CHIEF JUSTICE concurs in opinion with Judge COWEN.

*Goldsmith* was in custody, &c. and that *Mervin* was returned by the sheriff of New-York, to whom the *capias ad respondendum* was directed, not found. The suit was commenced in August, 1830, and judgment rendered by default, in December following. To this evidence *Mervin* objected, on the ground that as it appeared by the record that he was not arrested, and had not appeared in the original action, the record was not competent evidence against him, until after his liability should be established by other evidence, and then only of the amount of the plaintiff's demand. Objection overruled, and exception taken. After the record was received, no further evidence being offered by the plaintiff, Mervin moved for a nonsuit, on the ground that the record did not prove his *liability. Motion over- [ *295 ] ruled and exception. The judge charged the jury that under the state of the pleadings the plaintiff was entitled to a verdict. Exception. Verdict and judgment for plaintiff. The defendants now bring error.

*E. C. Benedict*, for plaintiffs in error.

*A. Taber*, for defendant in error.

After advisement, the following opinions were delivered :

By BRONSON, J. Under the old statute in relation to proceedings against joint debtors, it was held that the judgment was *prima facie* evidence of a debt against the defendant not brought into court in the first suit—that an action of debt could be maintained against him on the judgment, but that he was at liberty to enter again into the merits, and show that he ought not to have been charged. *Dando* v. *Tremper*, 2 *Johns. R.* 87. *Bank of Columbia* v. *Newcomb*, 6 *id.* 98. *Taylor & Twiss* v. *Pettibone*, 16 *id.* 66. But in none of these cases did the defendant plead any matter going to the justice of the original demand. Had he done so, I cannot suppose that the judgment would have been regarded as furnishing *prima facie* evidence of his liability. It is against a first principle in the administration of justice, to hold a man concluded by a judgment, or to lay on him the burden of proving a negative for his discharge, when he had no opportunity of answering in the original action. *Borden* v. *Fitch*, 15 *Johns. R.* 121. *Starbuck* v. *Murray*, 5 *Wendell*, 148. *Holbrook* v. *Murray*, *id.* 161. *Shumway* v. *Stillman*, 6 *id.* 447. There is only one case where the defendant by his plea denied his original liability, and there the judgment was not regarded as furnishing presumptive evidence of the joint indebtedness. *Carman* v. *Townsend*, 6 *Cowen*, 695, 6 *Wendell*, 206, *S. C. in error*. Carman, who was not taken in the first suit, pleaded that the promises on which the judgment was recovered were made by the other defendant *solely*, and not by both defendants *jointly*. *The plaintiffs took issue on [ *296 ]

the plea, and on the trial proved that the promises were made by both defendants as partners. Having maintained the only issue on the record, it was held that the plaintiffs were entitled to recover. This is the only case where the plea has gone to the justice of the original demand; and I fully concur in the opinion expressed by the chancellor, that the defendant might always so plead under the former statute as to throw on the plaintiff the burden of proving the original indebtedness, instead of requiring the defendant to disprove it.

If this were a new question, I should have thought that the only effect of the judgment, as against the party not brought into court, was, to authorize an execution against the joint property of all the defendants, and that an action of debt would not lie upon the judgment. 1 *R. L.* 521, § 13. But a different rule can work no great injustice, so long as the defendant is at liberty to set up any matter of defence which would have been available in the first action, and the burden of proof is not changed; and such is, I think, the result of the cases under the former statute. If the defendant does not, by his plea, call in question the justice of the original demand, the judgment is *prima facie* evidence against him; but if he denies his original liability, the judgment proves nothing, and the plaintiff must make out his case *de novo*.

Although it must be regarded as settled, that an action of debt will lie on such a judgment recovered prior to the year 1830, it does not follow that this action can be maintained. Under the former statute, there was some ground for holding the judgment to be *prima facie* evidence of a debt against the defendant who was not brought into court in the first suit; for the statute authorized a judgment against all of the defendants, *without limiting its effect*, except as to the execution to be issued upon it. 1 *R. L.* 521, § 13. But the present statute, under which this judgment was recovered, has gone a step further, and provided, that as against a defendant not served with process, the judgment " shall be evidence *only* of the extent of the plaintiff's demand, *after the liability of such defendant shall have been* [ *297 ]    *established by other evidence.*" 2 *R. S.* 377, § 2. The plaintiff may have an execution against the partnership property of all the defendants. § 4. But in an action against the defendant not taken, the judgment proves nothing. His " liability" must be established by " other evidence ;" and it would be a strange anomaly in the law to hold that an action of debt will lie on a judgment which is not even *prima facie* evidence against the party sued. True, there is an implication that the judgment may be evidence of " *the extent* of the plaintiff's demand" when " the liability" of the defendant has been made out by other proof : but this can have no influence beyond that of limiting the amount of the recovery in the second action. Whether the plaintiff sues on the judgment, or counts on the original cause of action, he cannot recover more, but he may recover

less than he did in the first suit.   It is impossible to maintain that if the plaintiff prove a joint " liability" or indebtedness of one dollar, he may then use a judgment for one thousand dollars as evidence of " the extent" of his demand, and entitle himself to a verdict for that amount.   Such a doctrine would be repugnant to all my notions of justice.

But it is enough for the present question, that the judgment alone, as against the defendant *Mervin*, only proves that the plaintiff is entitled to an execution against the partnership property of both defendants, and may affect " the extent" of the recovery in a second action.   As to any further or different liability of *Mervin*, the judgment proves nothing whatever.   If the plaintiff in declaring upon it had stated the case truly, and admitted that Mervin was not brought into court in the first suit, the declaration would have been bad on demurrer.   It would not have made out any cause of action.   It would be strange, indeed, if that were a good declaration which shows no " liability" on the part of the defendant.

If the plaintiff could make any use of the judgment in declaring against Mervin, he should, I think, have set out the original cause of action in addition to the judgment.   That he has not done.   The declaration contains no averment whatever of the original liability of Mervin.

*But I think an action of debt, in any form of declaring, can- [ *298 ] not be maintained upon this judgment, except against the defendant Goldsmith, who was brought into court in the first suit.   If the plaintiff wishes to go beyond the partnership effects of the defendants, and reach the sole property of Mervin, he should sue on the original cause of action ; and that I am inclined to think he may do, notwithstanding the judgment.   In *Robertson* v. *Smith*, 18 *Johns. R.* 459—see also the opinion of the chancellor in *Carman* v. *Townsend*, 6 *Wendell*, 206—the judgment in the first suit was held to be ·an extinguishment or merger of the original promises, so that a second action could not be maintained upon them.   But the first suit was not brought under the joint debtor act.   The plaintiff only named in the process and subsequent proceedings *the two defendants against whom* the judgment was recovered, without impleading the two others who were afterwards sued.   But here Mervin, as well as Goldsmith, was named in the process and subsequent proceedings ; and if the plaintiff should now bring a new action on the original promises, serving the process on Mervin only, although both must be named in it, I see no sufficient reason why he should not be allowed to recover.   True, it would be an anomalous case, but the necessity for it grows out of the statute ; and permitting an action on the original indebtedness, would be far less objectionable than it would be to hold that debt will lie on a judgment which is not even *prima facie* evidence of the defendant's liability.·

But if debt on the judgment will lie against Mervin as well as Goldsmith, and if the plaintiff may declare without averring an original joint indebted-

ness, I still think the second plea good, and that the replication was no answer to it.   So long as the rule was, that the judgment was *prima facie* evidence against the defendant not taken, a plea that the defendant was not served with process and did not appear, was held insufficient.   *Bank of Columbia* v. *Newcomb*, 6 *Johns. R.* 98.   It should go further and deny the original joint indebtedness.   *Carman* v. *Townsend*, 6 *Wendell*, 206.   But now, the judgment having ceased to be presumptive evidence of [ *299 ]   the defendant's liability, the second *plea furnishes a complete answer to the declaration.   It destroys the right of action which the plaintiff sets up.   The replication that the original action was commenced by a capias issued against both defendants and served upon Goldsmith, without any further averment, amounts to nothing.   It leaves the case just where it was before.   The plaintiff should have gone further, and averred that the judgment was not only recovered against the defendants as joint debtors, but that they were in fact joint debtors, and the original cause of action should have been set out, so that Mervin could have an opportunity of answering it in his rejoinder.   He would be at liberty to set up any defence which would have been available if the judgment had not been recovered.   The statute does not preclude him from doing so, and the plainest principles of justice forbid that we should go a single step beyond the letter of the law.

But if we lay the special plea out of the case, it is difficult to maintain that Mervin was not entitled to a verdict on the issue of *nul tiel record*. The plaintiff counts in the usual form, as upon a record furnishing conclusive evidence of the liability of both defendants.   Mervin answers, that there is no such record ; and so the fact turned out to be on the trial.   The record produced proved no liability whatever on the part of Mervin.   There was no such judgment, in its legal effect, as that upon which the plaintiff counted ; and he either failed altogether to maintain the issue of fact, or was liable to be nonsuited on the ground of variance.

On the pleadings as they stand, the objections to the action are, I think, insuperable.   But if we disregard the pleadings, and look only to the question of right, it will not aid the plaintiff's case.   He gave no evidence beyond producing the record ; and the statute must be repealed before we can say that the judgment proved the liability of Mervin.   The plaintiff should have been nonsuited.   On this point we are all agreed that the judgment must be reversed.   On the other questions my brethren do not concur with me in opinion.

[ *300 ]     *By Cowen, J.   I think the court below erred in overruling the motion for a nonsuit.   The first section of the first article, 2 *R. S.* 299, 2d ed. declares that, where one of several joint debtors is not served with process, judgment shall, notwithstanding, be entered against all, in the same manner as if all had been served.   But the second section provides that, though the judgment shall be conclusive against the defendant

who was personally served, yet " against every other defendant it shall be evidence only of the extent of the plaintiff's demand, after the liability of such defendant shall have been established by other evidence." On this provision no court could feel any difficulty in estimating what the record in evidence below amounted to, unless there was something in the issue joined which took the case out of the statute. That issue was *nul tiel record*. Under the old joint debtor act, it was held that upon this particular issue the court had no alternative, but were bound to render judgment for the plaintiff, on proof of the record, the same as if all the defendants had been served with process in the original suit. *Lando* v. *Doll,* 2 *Johns. R.* 87. The action there was on a judgment obtained under the 1 *R. L. of* 1801, *p.* 353, § 13. That act, like the present, directed judgment to be entered against all in the usual form, without making any declaration what effect it should have as evidence. The same statute continued till the revisal of 1830, *vid.* 1 *R. L. of* 1813 *p.* 521, § 13; and defendants were put to a course of special pleading in order to question the original cause of action. *Daddo* v. *Doll* held no more than what is familiar to the law of evidence; that a record proves itself. In doing so it completely falsified the particular plea; and the court truly inferred, therefore, that they could not withhold judgment. But the statute of 1830 declares expressly and unqualifiedly, that the record shall not, thereafter, have such effect. This declaration is made irrespective of the forms of pleading. In these the statute works no change. It is a statute simply limiting the force of a certain species of evidence. If it were intended to operate only upon a special plea adapted to the case, it was at least supererogatory, after the decision in *Townsend* v. *Carman,* 6 *Cowen,* 695; 6 *Wendell,* 206, *S. C.* which had already recog-     [ *301 ] nized a special issue by which the defendant himself might bring down the evidence to about the same effect declared by the statute. Had this intended to require any particular form of pleading to warrant its application, I can hardly doubt that it would have said so. Another part of the revised statutes, declaring that a specialty shall no longer conclude in certain cases, requires a plea or notice adapted to the question. 2 *R. S.* 328, 2d ed. § 97, 98. It is difficult to see, in the case at bar, what reason there is for adhering to the more complex and embarrassing course of pleading under the old statute. The legislature had power to declare the effect as well in regard to one issue as another. The new statute is remedial, and therefore should be construed liberally. I think it meant to turn the plea of *nul tiel record* into a general issue upon the original cause of action. It does not declare the judgment to be *conclusive* evidence of any thing against the defendant not personally served; but merely considers it as belonging to that class of evidence called constructive admissions; and deals with it upon the principles applicable to an admission of one joint debtor when offered to affect another. Suppose an action of debt or assumpsit brought

on the original demand, process served on both defendants, and a plea of *nil debet* or *non assumpsit* interposed ; the course at the trial would be first to show that the defendants were partners or otherwise jointly concerned in contracting *a debt* answering, in its nature, to that declared on.   Then the rule comes in, that a confession or an account stated or any equivalent act by one, is evidence against the other to establish the amount of *the particular debt*, or as the statute words it, the *extent of the plaintiff's demand.* A suit brought against two joint debtors, one having notice and judgment passing against him, whether on trial or by default, was very justly deemed by the legislature parallel with a voluntary admission.   In the nature of things, it holds about the same rank in the scale of persuasive evidence. *Vid. Cowen & Hill's Notes to* 1 *Phil. Ev.* 170 *to* 173, *and the text, p.* 92, 3.   It is *prima facie* proof of the sum admitted to be due. [ *302 ]  If the admission be *shown to have been a mistake, if less than the judgment, or if nothing was in fact due, the record evidence is qualified or defeated accordingly.   If the defendant served were insolvent and colluded with the plaintiff, in order fraudulently to fix a debt on his co-defendant, the record, like any other admission made under such circumstances, would go for nothing.   The statute, indeed, a little exceeded our own peculiar notions in one respect.   I think it would make the record *evidence* against a copartner not having notice, though the judgment were obtained after he had dissolved his connection with one who had.   This is overstepping the rule as settled in our own and perhaps most of the American courts. *Vide Cowen & Hill's Notes to* 1 *Phill.* 173, 4.   But in doing that there is evidently no great danger, for we still keep within the boundary of the rule as it is understood at Westminster Hall.   1 *Phil. Ev. Cowen & Hill's ed.* 92, 3.   1 *id.* 8*th Lond. ed. by Phil. & Amos,* 399, 400.

An effort was made, on the argument, to show that since the revised statutes, the plaintiff in the original suit has no longer any right to declare on his judgment as such.   It was contended that he must connect with it the original cause of action, indeed recur and to make that his substantive ground.   Therefore, it was insisted that the judgment for the plaintiff below on the demrurer to the replication was erroneous.   Several cases were cited to prove that a judgment obtained in a neighbouring state cannot be relied on as of any force whatever, where the defendant had no notice and did not appear nor reside within the jurisdiction of the court.   *Starbuck* v. *Murray*, 5 *Wendell*, 148.   *Holbrook* v. *Murray, id.* 161.   The second plea is framed on the latter case ; and claims to treat a domestic judgment as void, though rendered on a proceeding in exact accordance with the statute.   The cases cited pronounced that a jndgment in Massachusetts rendered on attachment might be avoided, (even thought he record asserted the defendant's appearance,) by a plea that he did not appear, and had not notice. Indeed, the principle of the plea here, for aught I see, goes the length

New-York, May, 1840.—Mervin v. Kumbel.

of saying that all our · domestic judgments on *attachment are    [ *303 ]
void under the circumstances pleaded ; for it is said that, un-
der the United States constitution and laws, equal faith and credit are
due to records of a neighbouring state as our own.   The doctrine in the ca-
ses cited arose on the *lex loci ;* but even in that view, cannot, perhaps, as
between neighbouring states be considered as entirely settled.   State author-
ities conflict.   *Vide Hall* v. *Williams,* 6 *Pick.* 239, *Parker, Ch. J. and
the cases cited in Cowen & Hill's Notes to* 1 *Phil.* 799 *to* 801, *id.* 909.` to*
915.   It is a vexed question which we need not now decide, and which can-
not perhaps be put to rest by any jurisdiction short of the supreme court of
the United States.   So far as judges of that court have spoken, it is, I be-
lieve, against our own authorities.   *Vide Gibbs* v. *Gibbs,* 1 *Peters' C. C.
R.* 155 ;  *Mills* v. *Duryee,* 7 *Cranch,* 481 ;  *Hampton* v. *M'Connel,* 3
*Wheat.* 234 ; *vide note (c) to last case.*   In this note the learned reporter
seems to suppose that the measure of pleading in answer to the judgment of
a neighboring state, is the same as to a domestic judgment.   *Vide also Green*
v. *Sarmiento,* 1 *Peters' C. C. R.* 74.

The now revised statutes, we have seen, give the same direction as the
old in respect to the form of entering judgment against joint debtors where
all cannot be reached by process ; and if the judgment is to be regarded as
having any effect whatever, it seems to me it must be effectual for the pur·
pose of confining the plaintiff to a declaration in debt or a *scire facias,* the
same as if the defendant had been brought in.   Should the plaintiff recur to
his original cause of action, the defendant might meet him with the plea of
a former recovery in bar ; and it is extremely difficult to see how he could
.avoid it.   Upon him who comes in and takes the benefit of our remedy, it
would, perhaps, in any view, be conclusive.   I am aware that the same ob-
jection may arise in respect to foreign judgments which we have held void
under similar circumstances ; nor will I deny that after the debtor has avoid-
ed any judgment by plea, he should be estopped to plead the same judgment
in bar.   There is, however, a license taken in respect to the *lex
fori* of foreign countries, which we cannot apply to our own.   *Ex    [ *304 ]
parte judgments and decrees, even of neighboring states, are,
notwithstanding the provisions of the federal constitution and statute, re-
ceived with deductions which we have no power to make in respect to those
which have passed, under statutes of this state in our domestic tribunals.
Those of neighboring states, though pursuant to constructive statute notices,
we have always claimed either to disregard *in toto,* or receive under no-
tions of international comity, to such qualified extent as we may deem conform-
able to the general safety of our own citizens.   This doctrine, as I believe
it is generally understood and acted on by the state courts, is presented and
vindicated in *Denison* v. *Hyde,* 6 *Conn. R.* 508, 519.   Clearly we have no

such discretion under domestic statutes. These abound with provisions for serving process on goods, or by advertisements in newspapers. Such services we are as much bound to recognize as if they were by the hand of the sheriff. Savage, Ch. J. in *Owners, &c.* v. *Mayor, &c. of Albany,* 15 *Wendell,* 374, 376, and *Vide Sharp* v. *Pratt, Id.* 610. The statute in question is of the nature of those mentioned. It declares that service on my partner shall be a service on me, so far as to make me presumptively liable, for the whole debt awarded against us both. *Green* v. *Sarmiento, Peters' C. C. R.* 74, was debt in Pennsylvania, United States circuit court, on a judgment rendered against Sarmiento & Mahony, under an old joint debtor act, the former alone having been served with process. Washington, J. in the course of his remarks, seems to concede that such a judgment might be holden, under our then law, conclusive against Mahony. *Id.* 82. And the drift of his reasoning is, to show that if conclusive here, it would be so in a neighboring state. For my own part, I am not prepared to concede, without much qualification, that a judgment obtained on an ex parte proceeding, even in a neighboring state against a citizen of this state, shall not bind him here. Suppose a judgment on *sci fa.* with two nihils against special bail; ought it not to be maintained on the ground that the bail were bound by the law of the state where they became bail, to notice such a proceeding at their peril ? *M'Rae* v. *Mattoon,* 13 *Pick.* 53, and vide the cases cited in *Cowen & Hill's notes to* 1 *Phill.* 913.

[ *305 ]    *Without insisting, however, that a statute which, under the circumstances stated in the second plea, should attempt to conclude a defendant, would be operative as an estoppel, it is enough to say, that the statute in question disavows such a purpose. It merely declares that the judgment shall come as an admission of the defendant's co-debtor, who has had reasonable notice to contest the demand for both. The form of action is not such, as to cut off any essential right; and a special action upon a formal judgment, in a court of record would be so very anomalous, that I cannot think the statute intended to require or even tolerate it. It was the constant course under the old statute, to declare in a general way. And I must be permitted to say, I am not willing to sanction anomalies in the forms of pleading or practice, except when I feel that the ends of substantial justice imperiously call for them.

No evil can, that I see, arise from a general form of declaring, more than from any other. The practice of proceeding *ex parte* against one, while another is served with process, may be abused ; and evidence be thus improperly manufactured. But that objection has existed a great while, under the practice of declaring in the ordinary mode, and while the judgment would perhaps, on any issue, have been *prima facie* evidence of the plaintiff's whole case. *Townsend* v. *Carman, and Dando* v. *Doll, before cited. Bank of Columbia* v. *Newcomb,* 6 *John. Rep.* 98. *Taylor* v. *Pettybone,*

New-York, May, 1840.—Mervin v. Kumbel.

16 *John. Rep.* 66. The fact of non-service and non-appearance, may now, as it always might, be suppressed in the original record. But I am not aware that any such mal-practice has ever happened. The record lies open to general inspection. A mistake in this respect may, therefore, be readi-ly corrected on motion ; and no attorney would risk being laid by the heels or stricken from the roll, for a fraudulent omission of the proper entry. No party prosecuting in person, would willingly hazard the costs and punishment of such a base act.

It is not necessary to pursue the question, however, upon the second plea ; for we all agree that the judgment must be reversed upon the bill of exceptions. For myself, I *should have said nothing as to [ *306 ] either ground, beyond concurring in the judgment of reversal, had not my brother Bronson entertained a difficulty upon the second plea, which I could not bring myself to feel. I am of opinion that the judgment below was right upon that plea ; and concur upon the sole ground of error, in refusing to nonsuit, that the judgment should be reversed.

I do not care any thing for the precise chronological order in which the record is to be received ; as whether it comes before or after the extrinsic proof. I do not think the statute means to make that material. Upon this, the question is the common discretionary one, as to the order of evidence. Perhaps the record and evidence of original liability must be considered together, in order to connect them. What the statute means, is, that the record shall not be allowed as of any manner of effect, unless the jury shall believe there was a joint liability on the cause of action, which it sets forth. If there be no evidence raising even a question of this for the jury, the record should be withhholden from them altogether.

NELSON, Ch. J. concurred with Mr. *Justice* COWEN.

Judgment reversed ; *venire de novo* from court below ; costs to abide event.